```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 09-14157-CIV-GRAHAM
                              MAGISTRATE JUDGE P. A. WHITE
ADAM MOTLOW,                :

        Plaintiff,          :

v.                          :         REPORT OF
                                    MAGISTRATE JUDGE
WALTER McNEIL, et al.,      :

        Defendants.         :
_____
```

## I    INTRODUCTION

This pro se civil rights action pursuant to 42 U.S.C. §1983 is pending on claims raised in plaintiff Motlow's amended complaint (DE#5) against two defendants at Okeechobee C.I., the Medical Director Dr. Haridas Bhadja, and Senior Registered Nurse Supervisor Valerie Brooks-Campbell. Motlow claims that they were deliberately indifferent to his serious medical needs relating to his vision.

The procedural status of the case is presently, as follows. A Preliminary Report (DE#21) recommended that claims against Florida DOC Secretary McNeil be dismissed, and that the case be allowed proceed against Bhadja and Brooks-Campbell. A Report (DE#46) recommending denial of Bhadja's Motion to Dismiss (DE#37, which is not treated as motion for summary judgment) remains pending. [An Order (DE#48) which was entered on 1/15/10, adopted the Preliminary Report, but when it was processed, that Order was mistakenly entered on the CM/ECF docket as ruling on Bhadja's motion to dismiss DE#37 and the Report DE#46]. Brooks-Campbell filed a motion to dismiss (DE#38) which relied on supporting exhibits (filed at DE#30), and an Order of Instructions therefore was entered informing plaintiff Motlow of his right to respond to Brooks-Campbell's motion to dismiss, and instructing him that it would be treated as a motion for summary judgment (see Order, DE#53). Three days later Brooks-Campbell, noting that her motion was being converted to a summary judgment motion rather than being treated as a motion to dismiss, filed Notice (DE#57, pp.1-4) with supplemental exhibits (Affidavits, filed at DE#57, pp.5-13). Plaintiff filed a Response in Opposition (DE#73); Defendant Brooks-Campbell filed a Reply (DE#74); and on

2/25/10 a paperless Order (DE#75) instructed the plaintiff that he could further respond on/before 3/19/10.[1] It is now nearly three weeks since the 3/19/10 deadline, and the plaintiff Motlow has filed nothing further in opposition to Brooks-Campbell's motion for summary judgment.

**This Cause, then, is currently before the Court upon the Motion to Dismiss (DE#38) filed by Brooks-Campbell,** with supporting exhibits, **which has been treated as a motion for summary judgment.** In support of her motion for summary judgment, Brooks-Campbell relies upon: medical documents that the plaintiff had filed at DE#30; the Affidavit of Valerie Brooks-Campbell, RN (DE#57, at pp. 5-6); the Affidavit of Dr. Haridas Bhadja (DE#57, at pp. 7-11); and the Affidavit of Kathey Siler, Health Information Supervisor at OCI (DE#57, at pp. 12-13).  The plaintiff Motlow's filings in opposition consist of two Responses: 1) "Plaintiff Response to Defendant Valerie Brooks-Campbell's Motion to Dismiss" (DE#42) which Motlow submitted before entry of the Order of Instructions telling him the motion to dismiss would be treated as one for summary judgment (DE#53), and "Plaintiff's Response In Opposition to Defendant Valerie Brooks Campbell's Motion for Summary Judgment" (DE#73).[2]

---

[1] Plaintiff's filings show he does not understand that only Brooks-Campbell's motion was construed as a motion for summary judgment. On 2/17/10, some 5 weeks after entry of the Report DE#46, he submitted a Response DE#71, captioned as an Opposition to "Haridas Bhadja Motion for Summary Judgment."

[2] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interroga-
> tories, and admissions on file, together with the
> affidavits, if any, show that there is no genuine issue
> as to any material fact, and that the moving party is
> entitled to judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to
> establish the existence of an element essential to that
> party's case, and on which that party will bear the
> burden of proof at trial.  In such a situation, there
> can be 'no genuine issue as to any material fact,' since
> a complete failure of proof concerning an essential
> element of the non-moving party's case necessarily ren-
> ders all other facts immaterial. The moving party is

2

Brooks-Campbell thereafter filed her Reply (DE# 74).

In his first Response (DE#42), plaintiff Motlow argued that his sworn complaint should be treated as being, in effect, an affidavit. Relying upon medical documents from DE#30, Motlow further argued in his Response (DE#42) that the defendants' account of the facts and his version are "undoubtedly diametrically opposed," and argued that

---

> 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11 Cir.1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11 Cir.), <u>cert. denied</u>, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial <u>Fed.R.Civ.P.</u> 56(e); <u>Coleman v. Smith</u>, 828 F.2d 714, 717 (11 Cir.1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Baldwin County, Alabama v. Purcell Corp.</u>, 971 F.2d 1558 (11 Cir.1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, supra).

Pursuant to <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11 Cir. 1987), the Order of Instruction (DE#53) was entered to inform the plaintiff Motlow of his right as a *pro se* litigant to oppose the defendant Brooks-Campbell's motion to dismiss, treated as a motion for summary judgment (DE# 38). The Order provided Motlow with explicit instructions regarding the requirements under Rule 56 for a proper response to such a motion.

3

"since the facts are clearly disputed," summary judgment in favor of the defendants would be improper. (See DE#42, pp.4-6). With his second Response (DE#73), which was submitted after entry of the Order of Instructions (Order DE#53), plaintiff Motlow submitted two Exhibits, labeled "Exhibit A," and "Exhibit B." Motlow's composite "Exhibit A" includes five inmate requests or informal administrative grievances (dated 1/19, 2/18, 2/8, 3/5, and 3/4/09), all directed to "Administrator Campbell," four of which were answered in writing by Brooks-Campbell on 2/25, 2/26, 3/10, and 3/10/09 (Ex.A, DE#73 at pp. 13-16). It also includes a "General Affidavit" which is dated 12/30/09 and signed by Motlow himself (Ex.A, DE#73, at p.17). Motlow's Exhibit B includes a 3/16/09 Formal Grievance submitted by him, with a 3/19/09 Response by ARNP Bass, Acting CHO, which was countersigned on 3/24/09 by R. McCracken AWP (Assistant Warden) (Ex.B, DE# 73, pp.19-22). Motlow's Exhibit B also includes an April 15, 2009 letter to Motlow from the "Division of Medical Quality Assurance, Consumer Services Unit" ("CSU") of the Department of Health, in Tallahassee, regarding complaint Reference Number 200908729, which Motlow had lodged against Valerie J. Brooks-Campbell, RN, on which the CSU stated no action could be taken because it lacked information needed to support Motlow's complaint. (Ex.B, DE#73, at p.23).

## II   DISCUSSION

In her motion (DE# 38) the defendant Brooks-Campbell argues that the medical records pertaining to the plaintiff Motlow (at DE#30) contradict his claims of wilful and wanton actions by her, and contradict his claim that he was denied care. That argument is supplemented by Brooks-Campbell at DE#57 with her Affidavit, and the Affidavit of Dr. Bhadja.

### Law Relating to Deliberate Indifference, and Denial/Delay of Medical Care

The Eighth Amendment's prohibition on cruel and unusual punishment imposes a duty on prison officials to provide prisoners with "humane conditions of confinement," including adequate medical

4

care. Farmer v. Brennan, 511 U.S. 825, 832-34 (1994). The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Farrow v. West, 320 F.3d 1235, 1242 (11 Cir. 2003). It is a showing of prison official's deliberate indifference to an inmate's serious medical need that constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Generally, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11 Cir. 2003) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11 Cir. 1994)). Such claims are not limited to medical staff, but may also arise based on acts/omissions of other prison personnel. On a claim that a guard impeded access to medical care, the inmate must provide, for example, evidence that the guard intentionally delayed or denied medical care, without explanation, for a serious medical condition that was known or obvious to the guard, Estelle v. Gamble, supra, 429 U.S. at 104; Brown v. Hughes, 894 F.2d 1533, 1538 (11 Cir. 1990). Even where an inmate has sustained a serious injury, however, a defendant corrections officer or medical staff member may be entitled to summary judgment where the plaintiff offers no evidence that the defendant was aware of his injury, or that the defendant was subjectively aware of a serious risk of harm.[3]

Thus, to show that a prison official acted with deliberate indifference to his serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. Farrow, 320 F.3d at 1243 (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11 Cir. 2000)). First,

---

[3] See Farrow v. West, supra, 320 F.3d at 1248 (Nurse, alleged in the complaint to have ordered her staff not to provide medical care, was entitled to summary judgment where the prisoner plaintiff failed to submit evidence that the nurse was herself subjectively aware of a serious risk of harm to the plaintiff); Brown v. Hughes, supra, 894 F.2d at 1539 (with respect to claim relating to delay in treatment of a serious injury [a broken foot], 2 nurses, a corrections officer, and the Sheriff were entitled to summary judgment where the plaintiff's affidavits and other evidence failed to show that they were aware of his injury on the day that it occurred).

the plaintiff must present evidence of an objectively serious medical need [i.e., one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention]. Id. In either situation, the medical need must be one that, if left unattended, poses a substantial risk of serious harm. Id. Second, the plaintiff must prove that the prison official acted with an attitude of deliberate indifference to that serious medical need. Id. Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11 Cir. 1999).

Crucial to establishing an "unnecessary and wanton infliction of pain" is some proof that officials acted with specific intent. The exact nature of the specific intent required depends on the type of claim at issue. Campbell v. Sikes, 169 F.3d 1353, 1363, (11 Cir.1999). This specific-intent requirement for an Eighth Amendment violation applies to claims of medical indifference. Campbell, supra, 169 F.3d at 1363-64.

As the Eleventh Circuit in Campbell v. Sikes observed, the Supreme Court in Wilson v. Seiter, 501 U.S. 294 (1991), and later Farmer v. Brennan, has "refined the inquiry" regarding satisfaction of the subjective element required for an Eighth Amendment deprivation. Campbell, supra, 169 F.3d at 1363. The Supreme Court explained in Wilson, that the Eighth Amendment applies only to punishments, and that prison conditions are only punishment if a mental element of punitive intent is shown, Wilson, supra, 501 U.S. at 300 ("If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify"). In Farmer, the Court provided further explanation of the mental state that is required for deliberate indifference, Farmer, supra, 511 U.S. at 837-38 (holding that a prison official cannot be found liable under the 8th Amendment for denying an inmate humane conditions unless he knows of and disregards an excessive risk to inmate health

6

or safety; and he must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference).

As the Eleventh Circuit has noted post-<u>Farmer</u>, proof that the defendant should have perceived the risk, but did not, is insufficient. <u>Campbell</u> <u>supra</u>, at 1364 (citing <u>Farmer</u>, at 838); <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1491 (11 Cir.1996) (the official must have a subjectively "'sufficiently culpable state of mind,'" and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not...'") (quoting <u>Farmer</u>, <u>supra</u>, 511 U.S. at 834, 838). Liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk." <u>Campbell</u>, at 1364 (citing <u>Farmer</u>, at 837).

## **Analysis**

As noted in prior reports, the plaintiff has claimed that he is diabetic, and in danger of losing his eyesight. He claims that when he was at South Bay Correctional Facility in 2005 he began having problems with his eyes, and was sent to an outside specialist [Dr. Lavina] who said he needed a laser procedure called PRP (Pan Retinal Photocoagulation) on his left eye, but stated that there were risks associated with the procedure. Motlow claims that followup was ordered, and that he saw the specialist Lavina six times between December 2005 and March 2007. He claims that he received no treatment from May 15, 2007 to June 3, 2008, and that he then was transferred to OCI. There, Motlow claims, he told Brook-Campbell and Dr. Bhadja that he was requesting follow-up treatment, and claims that they prevented him from receiving the treatment prescribed by Lavina. He claims that they delayed his treatment, resulting in his suffering from severe headaches and deterioration of his vision. He claims that, finally, he was sent to see a specialist in February 2009 [a John Doe Ophthalmologist, not Dr. Lavina], who allegedly refused to treat his eyes because his eyes were "too damaged to perform laser surgery." That doctor allegedly recommended that Motlow be seen by yet another specialist. Motlow

contends that due to a 21 month delay in arranging for laser surgery, a delay for which he contends Brooks-Campbell and Bhadja were at least in part responsible, he suffered vision loss, because he was not allowed to complete the medical treatment first prescribed by Dr. Lavina.

It is undisputed that the plaintiff was seen by medical personnel from 2000 onward in regards to his vision. The course of care, which included examinations, diagnoses, and treatment, is outlined in some detail in the Affidavit of Dr. Bhadja, and there are, in addition, medical documents pertaining to the plaintiff which are of record in the case, at DE#30.

The filings in this case, including Bhadja's 11/6/09 Affidavit, demonstrate that Bhadja had personally cared for the plaintiff at OCI since May 29, 2008. Bhadja, in preparation of his Affidavit, reviewed plaintiff Motlow's records from 2000 to 2009. He states in his Affidavit that from his review those records, it is his conclusion that Motlow received all services recommended for care of his eyes, and that because of such care, on May 6, 2009, an outside specialist noted that the plaintiff's condition was stable, and that he should have followup in one year's time. At the time of the execution of Bhadja's Affidavit, that followup appointment was pending, and was the only treatment, event, or recommended care regarding Motlow's eyes which was pending/outstanding. Dr. Bhadja states in his affidavit that Motlow was not denied proper care, and that there are not recommended services which Motlow had not received other than the followup visit scheduled for 2010. Dr. Bhadja further states in his Affidavit that the issues with Matlow's eyes are due to his diabetic condition, which in turn creates a number of issues which treatment (as was rendered) can mitigate. According to Dr. Bhadja, however, those issues often worsen, notwithstanding the provision of care; and they often get worse due to a variety of factors about which Motlow was counseled, including but not limited to lack of blood sugar control, blood pressure, cholesterol, and refusal of medications and insulin.

Determination as to whether care provided by Dr. Bhadja to inmate Motlow was adequate, or deficient, and as to whether Dr. Bhadja might possibly be entitled to disposition of the complaint in his favor based on qualified immunity or some other ground, must wait until another day. [As noted supra, after a review of the amended pleading under the liberal pleading standard which applies to motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), which takes the plaintiff's allegations as true, and looks only a the claims and allegations raised within the four corners of the complaint, a separate Report has been entered (DE#46) which recommends that a motion to dismiss which was filed by Dr. Bhadja (DE#37) should be denied]. Here, the standard of review, which is applicable to the defendant Brooks-Campbell's motion (DE#38) upon consideration of it as a motion for summary judgment, is a different one. (See footnote 1, supra).

The plaintiff Motlow, without specifics, contends that Brooks-Campbell is responsible in part for the alleged denial and delay of care, which he contends has caused damage to his vision.

Motlow has contended that Brooks-Campbell is responsible because, according to him, she is "the Medical Administrator" and "was Legally Responsible for the operation of the [Medical Department] and for the welfare of all the inmates and Staff in the Medical Department." (Amended Complaint, §III, ¶6, DE#5 at pp.3-4). In his General Affidavit (DE#73, at p.17), Motlow states, as follows, *verbatim*:

> I am the plaintiff in the above case number since I was transferred from South Bay CF to Okeechobee CI. Defendant Bhadja and Valerie Brooks Campbells interfered with previously prescribed medical treatment plan. I was delay medical treatment which has caused me substantial harm and "pain." Both defendant practice of unjustified, unreasonable deliberate indifference to the serious medical needs of inmates. Both defendants failure to provide me with adequate treatment. Furthermore, the plaintiff complaint demonstrate an "atypical and significant hardship."

9

(General Affidavit, at DE#73, p.17)

General conclusions, or statements of his own belief, which merely repeat and restate allegations of his complaint, do not suffice to refute evidentiary showings made on behalf of Brooks-Campbell in support of her motion for summary judgment. See Fed.R.Civ.P. 56(e); Coleman v. Smith, supra, 828 F.2d at 717.

Here, the defendant Brooks-Campbell has submitted an Affidavit of Dr. Bhadja, stating that he was a physician at OCI who personally provided care to Motlow from May 29, 2008 until November 2009 [the date of Bhadja's Affidavit], and which outlined details of the course of diagnosis, care and treatment provided to Motlow both during that period of time, and earlier. (DE#57, pp.5-11). Brooks-Campbell also has submitted her own Affidavit (Affid., DE#57 at pp. 5-6), which states and establishes, in pertinent part, that since August 2007 she has been employed at OCI as a Senior Registered Nurse Supervisor ("SRNS") (Id., at ¶¶1-3). Therein, she states that at all times she was acting within her discretionary authority as a health care provider and pursuant to DOC rules and regulations, and that she had no reasonable basis to believe that her actions were a violation of any statutory or constitutional right belonging to Inmate Motlow. (Affid., at ¶8). Brooks-Campbell's affidavit establishes that in that capacity (as SRNS) her responsibilities include budgeting, training and scheduling of nursing staff, implementing corrective action plans, responding to inmate requests/informal grievances concerning medical services, reviewing diet passes, and ensuring that nurses provide proper care to inmates. (Id., ¶3). Brooks-Campbell's Affidavit establishes that in that capacity she responded to inmate requests and informal grievances submitted by Motlow (Id., ¶4); but that in her role as SRNS she "had no control or any decision making ability or authority to authorize/deny Inmates' access to outside medical care/referrals, including that of Inmate Motlow." (Id., ¶5). In addition, Brooks-Campbell's Affidavit establishes that she has "not provided any direct care to Inmate Motlow." (Id.), that at no time has she

harassed, injured, or retaliated against Inmate Motlow for any reason, and has never taken any actions to injure Inmate Motlow, nor has she ever denied him proper care. (Id., at ¶¶7-9.

Examination of the plaintiff's sworn complaint, his responses to Brooks-Campbell's motion including his own General Affidavit, and the rest of the record in the case, including Bhadja's and Brooks-Campbell's Affidavits, reveal that Motlow had a history of diabetes, and before his arrival at OCI had a diagnosis of Proliferative Diabetic Retinopathy ("PDR"). The record, including the medical documents at DE#30, and the plaintiff's filings at DE#73, show that nearly a year after Motlow's arrival at OCI in 2008 Brooks-Campbell in her capacity as SRNS did [in February and March 2009] answer four inmate requests/informal grievances filed by Motlow. The fact that Brooks-Campbell in her capacity as SRNS was charged with the responsibility to answer some of the inmate Requests submitted by Motlow in February and March 2009, does not make her responsible for decisions regarding his course of treatment, and the decisions to provide and schedule, or to not provide, certain referrals or procedures as part of that treatment. Careful examination of the the medical documents pertaining to Motlow, which appear in the record at DE#s 30-1 and 30-2, reveals that they are devoid of entries indicating that SRNS Brooks-Campbell was directly involved in Motlow's care, or that she made decisions regarding what care was to be scheduled and/or provided, and when.

In sum, although he has contended in his complaint, and apparently continues to believe that Brooks-Campbell is an "Administrator" who is "Legally Responsible for the operation of the [Medical Department] and for the welfare of all the inmates and Staff in the Medical Department," the plaintiff Motlow has not submitted evidence that Brooks-Campbell is responsible for any decisions regarding the granting or denial of consults with outside specialists, or for the approval or denial of testing or of surgical or other procedures that may be provided in the course of an inmate's diagnosis, care and treatment. Her Affidavit, which remains un-refuted in this regard, establishes that she is not; and there

is nothing in the medical documents of record which call that showing into question.

To prevail on his medical claim under the Eighth Amendment for cruel and unusual punishment, against Brooks-Campbell, the plaintiff Motlow must establish not only that there was an excessive risk to his health or safety, but that from the facts of which the defendant Brooks-Campbell was aware it could be inferred that a substantial risk of serious harm existed if he was not provided care which he [Motlow] claims should have been afforded to him, at the time that he [Motlow] claims it should have been provided; and he must establish that the defendant Brooks-Campbell drew that inference, and yet failed to act. Motlow has not done so, and he has not refuted Brooks-Campbell's showing that she was not a medical care giver in Motlow's case, and was not in a position to make or change decisions regarding the scheduling or provision of examinations and/or procedures which Motlow contends should have been provided. As such, with regard to Brooks-Campbell, the required subjective element for an Eighth Amendment deprivation is not satisfied.

In the absence of a showing of deliberate indifference on the part of the defendant Brooks-Campbell, her motion to dismiss (DE#38), treated as a motion for summary judgment, should be granted.

**IV    CONCLUSION**

It is therefore recommended that: 1) the defendant Brooks-Campbell's motion to dismiss (DE#38) construed as a motion for summary judgment, be GRANTED; and 2) the case proceed on the plaintiff's separate claims against the defendant Dr. Bhadja, whose motion to dismiss DE#37 remains pending before the Court.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: April, 7th, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Adam Motlow, <u>Pro Se</u>
DC #181009
Okeechobee Correctional Institution
3420 N.E. 168th Street
Okeechobee, FL 34972-4824

Kiernan P. Moylan, Esquire
Assistant Attorney General
Office of the Attorney General
110 S.E. 6th Street, 10th Floor
Ft. Lauderdale, FL 33301-5000

Steven M. Lury, Esquire
Quintairos, Prieto, Wood & Boyer P.A.
1 E. Broward Blvd., Suite 1400
Ft. Lauderdale, FL 33301

The Honorable Donald L. Graham,
United States District Judge